UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | : |
| RAMSES OWENS,<br>    a/k/a "Ramses Owens Saad,"<br>DIRK BRAUER,<br>RICHARD GAFFEY,<br>    a/k/a "Dick Gaffey," and<br>HARALD JOACHIM VON DER GOLTZ,<br>    a/k/a "H.J. von der Goltz,"<br>    a/k/a "Johan von der Goltz," | :<br><br>:<br><br>:<br><br>:<br><br>: |
| Defendants | |

18 CR. 693 (RMB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S
MOTION REGARDING APPLICATION OF THE CRIME FRAUD EXCEPTION
AND WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

DEBORAH CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division

On the Memorandum

EUN YOUNG CHOI and THANE REHN
Assistant United States Attorneys, United States Attorney's Office, Southern District of New York

MICHAEL PARKER and PARKER TOBIN
Trial Attorneys, Criminal Division, United States Department of Justice

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 4
BACKGROUND .............................................................................................................................. 5
   I.   The Pending Charges Against Owens ................................................................................. 5
   II.   Owens's Fraudulent Conduct .............................................................................................. 6
   III.   Responses to the Government's Crime Fraud Motion ....................................................... 8
ARGUMENT .................................................................................................................................... 9
   I.   The Crime Fraud Motion Should be Granted .................................................................... 9
      A.   Owens Lacks Standing to Oppose the Government's Motion ........................................ 9
      B.   There is Probable Cause to Apply the Crime-Fraud Exception .................................... 10
      C.   Owens's Assertion of Work Product Privilege is Meritless .......................................... 12
   II.   The Indictment Should Not Be Dismissed Against Owens ............................................. 13
      A.   Applicable law ................................................................................................................ 14
      B.   Discussion ....................................................................................................................... 14
CONCLUSION .............................................................................................................................. 19

## Table of Authorities

**Cases**

*Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997) ................................................................ 9
*Cendant Corp. v. Shelton*, 246 F.R.D. 401 (D. Conn. 2007) ........................................................ 11
*Chevron Corp v. Salazar*, 275 F.R.D. 437 (S.D.N.Y. 2011) ........................................................ 12
*European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) ............................................ 17
*Ford v. United States*, 273 U.S. 593 (1927) ................................................................................. 15
*Hamling v. United States*, 418 U.S. 87 ........................................................................................ 14
*Hickman v. Taylor*, 329 U.S. 495 (1947) ..................................................................................... 12
*In re Grand Jury Proceedings*, 2001 WL 1167497 (S.D.N.Y. Oct. 3, 2001) ............................... 12
*In re Richard Roe, Inc.*, 168 F.3d 69 (2d Cir. 1999) .................................................................... 12
*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016) ................................................... 17
*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ............................................................ 14
*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ............................................................... 14
*United States v. Allen*, 160 F.Supp.3d 698, 707 (S.D.N.Y. 2016) ............................................... 17
*United States v. Ayesh*, 762 F. Supp. 2d 832 (E.D. Va. 2011) .................................................... 17
*United States v. Buck*, 13 Cr. 0282 (VM), 2017 WL 4174931 (S.D.N.Y Aug 28, 2017) ............. 16
*United States v. Cotten*, 471 F.2d 744 (9th Cir. 1973) ................................................................ 17
*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) ............................................................. 14
*United States v. Gayatrinath*, No. 02 CR. 673 (RMB), 2011 WL 873154 (S.D.N.Y. Mar. 11, 2011) ........................................................................................................................................ 13
*United States v. Gorcyca*, 2008 WL 4610297 (E.D.N.Y. Oct. 16, 2008) .................................... 13
*United States v. Manuel*, 371 F.Supp.2d 404 (S.D.N.Y. 2005) ............................................. 14, 15
*United States v. Mostafa*, 965 F. Supp. 2d 451 (S.D.N.Y. 2013) ................................................ 16
*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) ................................................................ 16, 17
*United States v. Zarrab*, 15 Cr. 867 (RMB), 2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) .. 16, 17
*United v. Bodmer*, 342 F.Supp.2d 176, 190 (S.D.N.Y. 2015) ..................................................... 18

**PRELIMINARY STATEMENT**

The Government respectfully submits this reply memorandum of law in further support of its motion for an order that the crime-fraud exception to the attorney-client privilege and work-product privilege protections applies to certain communications and documents (the "Relevant Information") and, additionally, that the attorney-client privilege and work-product protections have been waived with respect to the documents. The Relevant Information includes all communications and documents for which any claim of privilege is based on the attorney-client relationship between either defendant Harald Joachim von der Goltz ("von der Goltz") or any other person or entity, on the one hand, and attorneys at the law firms Mossack Fonseca & Co. ("Mossack Fonseca") and ███████ or ███████ (collectively, the "Owens Firms"), on the other hand, to the extent that those communications or documents concern or relate to the Revack Entities, the Revack Trust, or the Revack Holding Foundation.[1]

The Government's opening motion sets forth the basis for the Court to apply the crime-fraud exception, and no party purporting to hold any applicable privilege appears to contest the Government's arguments or to assert the privilege. Von der Goltz now claims that he is not the privilege holder in communications relating to the Revack Entities and is not in a position to oppose the motion. Defendant Ramses Owens ("Owens") did file an opposition to the Government's motion, but he also does not claim to be the privilege holder or to be acting on behalf of the privilege holder. Because the only person who has opposed the motion lacks standing to assert the privilege, and because no person purporting to be the holder of the privilege or to be

---

[1] The Government's original memorandum of law redacted the names of the two Owens Firms to protect the identities of unindicted individuals and entities. In Defendant Owens' memorandum in opposition, the Defendant chose to not redact the names of the law firms. The Government will continue to redact these names and respectfully requests the Court to allow for it to file an unredacted version of its Memorandum under seal.

4

acting on their behalf has appeared to assert the privilege, the Government's motion should be granted.

Even if the Court considers the arguments made by Owens, those arguments fail. Owens simply asserts that the Revack Entities are "independent legal entities," but makes no attempt to contest the detailed factual allegations in the Indictment demonstrating that these entities were created and maintained to facilitate von der Goltz's tax evasion schemes, which is the relevant consideration in determining whether the crime-fraud exception applies. Owens also cites the Panama Foundation Law, but that law relates to the general duty of confidentiality of foundation officers and employees and does not address the attorney-client privilege or the circumstances under which that privilege is forfeited or waived.

Finally, Owens separately asks the Court to dismiss the Indictment as to him. Because Owens remains a fugitive, the Court should decline to consider that motion on the basis of the fugitive disentitlement doctrine. Even if the Court were to consider that motion, it should be denied on the merits.

## BACKGROUND

I.    **The Pending Charges Against Owens**

The Indictment charges Owens with conspiracy to defraud the United States, conspiracy to commit wire fraud, conspiracy to commit tax evasion, wire fraud, and money laundering conspiracy. As alleged in the Indictment, Owens: (1) conspired with others to help U.S. taxpayer clients conceal assets and investments, and the income generated by those assets and investments, from the Internal Revenue Service ("IRS"), in violation of Title 18, United States Code, Section 371 (Count One); (2) conspired and participated in a fraudulent scheme to help U.S. taxpayer clients conceal assets and investments, and the income generated by those assets and investments,

from the IRS, in violation of Title 18, United States Code, Section 1349 (Count Two); (3) conspired with others, including von der Goltz and Richard Gaffey ("Gaffey"), to evade and defeat a substantial part of the income tax that von der Goltz owed to the United States, in violation of Title 18, United States Code, Section 371 (Count Three); (4) participated with von der Goltz and Gaffey in a fraudulent scheme to help von der Goltz conceal his assets and investments, and the income generated by those assets and investments, from the IRS, in violation of Title 18, United States Code, Sections 1343 and 2 (Count Four); and (5) conspired with others, including von der Goltz and Gaffey, to transport, transmit and transfer monetary instruments and funds to and from the United States, with the intent to promote the carrying on of their fraudulent scheme, in violation of Title 18, United States Code, Section 1956(h) (Count Five).

## II.     Owens's Fraudulent Conduct

Owens, from at least in or around 1992 through in or around 2010, worked as an attorney at Mossack Fonseca.  (Indictment ¶ 2).  Owens was von der Goltz's attorney with respect to the Revack Entities while he was employed at Mossack Fonseca. (*Id.* ¶ 39).  When Owens left Mossack Fonseca, he began working at the Owens Firms, and continued to be von der Goltz's attorney with respect to the Revack Entities.  (*Id.* ¶ 49).  During his employment with Mossack Fonseca and the Owens Firms, Owens assisted von der Goltz and other U.S. taxpayer clients, in, among other things, setting up and managing offshore foundations, companies, and bank accounts. (*Id.* ¶ 5, 15).  During this time, Owens held himself out to his clients, including U.S. clients, as an international tax expert.  (*Id.* ¶ 22).  Owens helped U.S. clients, including von der Goltz, to create and manage sham foundations and shell companies formed under the laws of countries including Panama, Hong Kong, and the British Virgin Islands ("BVI") to conceal, from the IRS and others, the ownership of foreign accounts and the income generated from those accounts.  (*Id.* ¶ 15).

6

Owens advised U.S. clients about how to structure their assets and ownership, typically with a sham foundation 'owning' the shell companies that nominally held undeclared assets, to conceal the U.S. taxpayer's ownership. (*Id.*). Owens then instructed his U.S. taxpayer clients to transfer their assets, including real property and bank accounts, to the sham foundations and shell companies, in order to conceal their true ownership from the U.S. government and other interested parties, including creditors. (*Id.*). Owens further helped to conceal U.S. clients' ownership and assets by offering corporate meeting minutes, resolutions, mail forwarding, and signature services for the sham foundations and shell companies for additional fees. (*Id.*).

Owens's contact with U.S. taxpayer clients was not exclusive to Panama or foreign jurisdictions. Owens met with U.S. taxpayer clients within the Southern District of New York and elsewhere in the United States. (*Id.* ¶ 15, 86, 104). At these meetings, Owens represented to his U.S. clients that they could avoid paying U.S. taxes by placing their assets in the structures he created. (*Id.* ¶ 15). Further, Owens caused U.S. taxpayer clients to travel outside the United States to locations including Panama, Switzerland, the Bahamas, and Costa Rica for services related to their undeclared assets. (*Id.*). Through the course of representing and working with U.S. taxpayer clients, Owens (1) advised a U.S. client not to enter the Offshore Voluntary Disclosure Program ("OVDP") (*id.* ¶ 25); (2) introduced U.S. clients to other coconspirators, including Gaffey (*id.* ¶ 25); (3) helped a U.S. Client devise a scheme to repatriate millions of dollars through the false sale of a company (*id.* ¶ 28); (4) helped U.S. Clients wire funds from offshore accounts into domestic U.S. accounts (*id.* ¶ 29); (5) helped von der Goltz, a client Owens knew to be a U.S. resident, resettle the Revack Trust into the Revack Holdings Foundation with von der Goltz listed as the founder and manager of the Foundation (*id.* ¶ 39); (6) helped von der Goltz open bank accounts in the United States without identifying von der Goltz as the beneficial owner (*id.* ¶¶ 44, 111); (7)

helped von der Goltz open bank accounts in Panama where he was listed as the beneficial owner of the bank account's assets (*id.* ¶ 45); (8) advocated for the beneficial owner of von der Goltz's entities to be listed as von der Goltz's mother, a non-U.S. person, following the request of U.S. companies for the beneficial owner (*id.* ¶¶ 46, 61, 111); (9) received payments that were routed through the United States (*id.* ¶ 49); (10) signed "Declaration of Non-U.S. status" forms for companies that were beneficially owned by von der Goltz (*id.* ¶ 52); (11) advised U.S. taxpayer clients to use debit or credit cards to charge expenses to sham foundations and falsely claim them as "business" expenses on their U.S. tax returns (*id.* ¶ 80); and (12) told U.S. clients if they used the structures he established, their children could receive tax-free money from the sham foundation (*id.* ¶ 84).

### III. Responses to the Government's Crime Fraud Motion

Von der Goltz filed a letter claiming that he "has no basis to contest the government's motion because the privilege the government seeks to disturb is not Mr. von der Goltz's to assert (or to waive)." (Dkt. No. 116). Von der Goltz denies that he has any basis to assert the privilege because he claims he was working in a representative capacity for "certain entities." However, he fails to identify who purportedly holds the privilege. Consequently, von der Goltz takes no position on the motion.

Von der Goltz's position as articulated in his letter is necessitated by his defense in this case, but is contrary to the evidence heard by the grand jury and compiled in the Indictment, which alleges that von der Goltz was in fact the beneficial owner of the Revack Entities, that he used these entities to conceal his assets and used the assets held in the Revack Bank Accounts for his own benefit, and that he was the client of Mossack Fonseca and the Owens Firms with respect to the Revack Entities. As explained in the Government's opening brief, the relevant standard here

is probable cause, and the Indictment provides probable cause to find that the crime-fraud exception is satisfied notwithstanding von der Goltz's current position.

Owens filed a response in which he does attempt to oppose the government's crime-fraud motion. (Dkt No. 118 ("Opp.")). Owens argues that the crime-fraud exception does not apply because the Revack Entities are "independent legal entities" that were established under Panamanian law, and also that the work-product doctrine protects the disclosure of some of the Relevant Information insofar as it is his attorney work product. Owens also asks the Court to dismiss the Indictment, arguing that the statutes Owens is charged with do not apply extraterritorially and that he had "no contact with the United States" during his employment at Mossack Fonseca and the Owens Firms. (*See id.* at 8). For the reasons stated below, Owens's arguments should be rejected.

## ARGUMENT

### I.    The Crime Fraud Motion Should be Granted

#### A. Owens Lacks Standing to Oppose the Government's Motion

It is well-established that the attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)." *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997). Owens provides no basis to conclude that he has standing to assert the privilege here. Owens contends that the Revack Entities are independent legal entities that are the holders of the attorney-client privilege, but he does not purport to be acting on behalf of the Revack Entities in opposing the Government's motion. On the contrary, he affirmatively disclaims authority to assert the privilege, stating that he "does not have the authority [to] assert the rights of the Revack Entities or make decisions about a waiver on their behalf." (Opp. 13). Indeed, Owens even fails to identify who would be in a position to do so. Because no person purporting to be the holder of

the privilege or to be acting on their behalf has appeared to assert the privilege, the Government's motion should be granted.

### B. There is Probable Cause to Apply the Crime-Fraud Exception

As set forth in the Government's opening brief, the facts alleged in the Indictment provide probable cause to find that von der Goltz and his agents, including Owens and Gaffey, committed a crime or fraud, and that communications involving the Revack Entities were made in furtherance of the crime or fraud. Owens's opposition brief asserts that the crime-fraud exception does not apply "because the Revack Entities are independent legal entities and have been established under the law of foreign jurisdictions." (Opp. 12). That argument in no way undermines the case for application of the crime-fraud exception here. The question is not whether these entities had independent legal status. Rather, the question is whether the function of these entities was to facilitate a crime or fraud.

As alleged in the Indictment, the Revack Entities were beneficially owned by von der Goltz throughout the relevant time frame. They had no business operations aside from holding von der Goltz's assets. The various Revack Entities were shell companies created and maintained for the purpose of concealing von der Goltz's beneficial ownership of assets both in the United States and abroad. (Indictment ¶ 37). These entities were initially owned by the Revack Trust, and subsequently by the Revack Holdings Foundation, and the documents creating both the trust and the foundation stated that von der Goltz was the primary beneficiary. (*Id.* ¶¶ 38-41). Von der Goltz maintained bank accounts in the names of the various Revack Entities and the Revack Holdings Foundation, and used the assets in those bank accounts for his personal benefit without reporting the assets to the IRS or paying income taxes on those assets as required by law. (*Id.* ¶¶ 43-45, 47).

These allegations provide probable cause to apply the crime-fraud exception. Regardless of precisely what Owens means by his assertion that the Revack Entities were "independent legal entities," the Indictment alleges that these entities were used to perpetrate a criminal scheme to conceal von der Goltz's assets and evade his United States tax obligations, which supports application of the crime-fraud exception. *See Cendant Corp. v. Shelton*, 246 F.R.D. 401, 406 (D. Conn. 2007) (applying crime-fraud exception where defendant had allegedly created sham entities to hide assets from creditors).

Owens also cites Article 35 of the Panama Foundation Law, which requires persons with knowledge of foundation activities to keep this information confidential. That is a red herring. The provision cited by Owens is not about the attorney-client privilege, and neither does it address the discoverability of information in litigation; rather, it is a general rule of confidentiality that applies to persons such as employees and officers of foundations. The Panama Foundation Law is not implicated by the Government's motion. The Relevant Information that is the subject of this motion primarily consists of documents that have already been lawfully obtained by the Government pursuant to a search warrant or mutual legal assistance treaty request, but withheld from the investigative team by a filter team as a precaution to preserve the privilege pending the Court's resolution of this motion, and documents that were lawfully sought through grand jury subpoenas but withheld by the subpoena recipients on the basis of attorney-client privilege. None of the custodians of these documents has sought to prevent disclosure on the basis of the Panamanian Foundation Law or any other legal rule aside from attorney-client privilege, which is the actual issue presented by this motion.[2]

---

[2] To the extent that Owens is suggesting that he himself is prevented from making any disclosures by Panamanian law, that is also irrelevant. The Government is not seeking anything from Owens at this time.

Finally, Owens offers no response to the Government's arguments that von der Goltz waived the privilege by inviting the Government to inspect materials relating to his relationship with Mossack Fonseca, by openly discussing that relationship at length during a meeting with the Government, by waiving the privilege in materials from the U.S. Law Firm dealing with the same subject matter, and by his failure to take any steps to assert the privilege for a period of more than 18 months after such materials were widely publicized. Indeed, aside from von der Goltz's belated attempt to assert the privilege in November 2017 (an assertion of privilege that he now says he has no right to make), no other person has taken any steps to assert the privilege in the more than three years since these materials were widely publicized and the Government's investigation and prosecution have been pending. Thus, even if the crime-fraud exception did not apply, any applicable privilege has long since been waived.

C. Owens's Assertion of Work Product Privilege is Meritless

Owens also claims that the work-product privilege applies to some of the Relevant Information. That argument fails for two reasons. First, the work-product privilege derives from the attorney-client privilege, so if the Court finds that the crime-fraud exception applies, that ruling will apply to both the attorney-client privilege and any work-product privilege as well. *See Chevron Corp v. Salazar*, 275 F.R.D. 437, 451 (S.D.N.Y. 2011) ("The [crime-fraud] exception also abrogates the work product doctrine.") (citing *In re Richard Roe, Inc.*, 168 F.3d 69, 71-72 (2d Cir. 1999). Second, the work product privilege "applies to 'materials obtained or prepared ... with an eye toward litigation.'" *In re Grand Jury Proceedings*, 2001 WL 1167497, at *13 (S.D.N.Y. Oct. 3, 2001) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). The work product privilege does not protect information that "is created in the ordinary course of business, even if it will also be useful in the event of litigation." *Id.* Here, the Relevant Information pertains to the creation

and management of the Revack Entities for the benefit of von der Goltz, which was done in the ordinary course of business by attorneys at Mossack Fonseca and the Owens Firms throughout the charged time period. Owens does not point to any actual or potential contemplated litigation for which any of these documents were created. The work product doctrine does not apply.

## II.     The Indictment Should Not Be Dismissed Against Owens

In his opposition to the Government's motion, Owens also asks the Court to dismiss the Indictment as to him. As the Government has previously argued in connection with a prior motion by Owens, he remains a fugitive from justice. (*See* Dkt. No. 97 (Govt. Opp. To Deft. Motion to Exclude Evidence)). Under the fugitive disentitlement doctrine, the Court should decline to hear the defendant's motion as he continues to evade the charges against him and remains a fugitive. *See United States v. Gayatrinath*, No. 02 CR. 673 (RMB), 2011 WL 873154, at *2 (S.D.N.Y. Mar. 11, 2011) (applying fugitive disentitlement doctrine to deny motion to dismiss indictment filed by defendant who was resisting the Government's efforts to extradite him from India); *United States v. Gorcyca*, 2008 WL 4610297, at *2 (E.D.N.Y. Oct. 16, 2008) (same, for fugitive who fled to Canada after having been arrested in the United States).

If the Court were to reach the merits of Owens's motion to dismiss, however, the motion should be denied.[3]

---

[3] Owens also argues that certain evidence should be precluded under Rule 403, and that the Government should be precluded from using newspaper reporting about the "Panama Papers" to prosecute him. (Opp. 15-16). The Government respectfully submits that arguments about the admissibility of particular evidence should be reserved for motions in limine. The Government also notes that the allegations in the Indictment are based not on newspaper reporting, but on exhibits and testimony that were submitted to the grand jury. In fact, as noted in the Government's motion, the prosecution team has been walled off by the filter team from reviewing newspaper reporting about von der Goltz that includes any documents or information covered by a potential claim of privilege. (*See* Dkt. 110 at 17).

A. Applicable law

An Indictment needs little more than to track the language of the statute charged and provide the time and place of the alleged crime. *See United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). An Indictment that contains the elements of the charged offenses, fairly informs a defendant of the charges against him, and enables him to plead guilty or not guilty is sufficient. *See Hamling v. United States*, 418 U.S. 87, 117; *see also United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012).

An extraterritoriality analysis is unnecessary when there exists a sufficient domestic nexus between the defendant and the charged crime. *See United States v. Manuel*, 371 F.Supp.2d 404, 409 (S.D.N.Y. 2005). If there is not a sufficient domestic nexus, the Court should then consider (1) if the statute charged explicitly applies extraterritorially, and if not (2) whether congressional intent to apply the statute extraterritorially can be inferred from the nature of the offense. *See United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011).

B. Discussion

1. The Indictment is Legally Sufficient to Charge Owens

The Indictment charges Owens with five counts. Each count tracks the language of the applicable statute, provides the applicable elements, and provides details regarding the time and place of the alleged crimes. Based on the Indictment, Owens has been fairly informed of the charges against him and could enter a plea of guilty or not guilty. Owens himself appears not to challenge that the Indictment provides the necessary information for him to enter a plea if he ever appears in the United States. (*See* Dkt. No. 118 at 6-8). Therefore, the Indictment sufficiently sets out the necessary information to inform Owens of the charges against him.

2.  The Indictment Is Not An Extraterritorial Application of Any Crime

Owens's argument regarding extraterritoriality fails, first and foremost, because the Indictment is not an extraterritorial application of any crime. The various charged crimes involved the commission of numerous overt acts in or through the United States, including several that are specifically alleged in the Indictment. (*Id.* ¶ 15, 86, 104) (Owens met with U.S. taxpayer clients within the Southern District of New York and elsewhere in the United States to solicit and maintain clients); (*Id.* ¶ 29) (Owens helped U.S. Clients wire funds from offshore accounts into domestic U.S. accounts); (*Id.* ¶ 44, 111) (Owens helped von der Goltz open bank accounts in the United States without identifying von der Goltz as the beneficial owner); (*Id.* ¶ 49) (Owens received payments that were routed through the United States); (*Id.* ¶ 80) (Owens advised U.S. taxpayer clients to use debit or credit cards to charge expenses to sham foundations and falsely claim them as "business" expenses on their U.S. tax returns). Additionally, Owens conspired to commit Counts One, Two, Three, and Five, and aided and abetted the commission of Count Four, with persons residing in the United States or for the benefit of persons residing in the United States.

"The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy 'was directed to violation of United States law within the United States.'" *Manuel*, 371 F. Supp. 2d at 409 (quoting *Ford v. United States*, 273 U.S. 593, 620 (1927)). Accordingly, "[w]here, as here, the object[s] of a conspiracy [are] the violation of American law, and co-conspirators committed extensive overt acts within American territory, there can be no serious question of the jurisdiction of the United States to punish all members of the conspiracy." *Id.*

In recognition of these principles, courts in this district have found that an extraterritoriality analysis is unnecessary where a sufficient domestic nexus has been alleged in connection with a

15

criminal conspiracy charge. *See, e.g.*, *United States v. Zarrab*, 15 Cr. 867 (RMB), 2016 WL 6820737, at *8 (S.D.N.Y. Oct. 17, 2016) (indictment alleged a "domestic nexus" between the defendant and his co-conspirators' conduct in the United States, and "[t]herefore, the question of whether the IEEPA and the ITSR apply extraterritorially need not be reached"); *United States v. Mostafa*, 965 F. Supp. 2d 451, 469 (S.D.N.Y. 2013) (where "[o]vert acts occurred in the United States," there was a "sufficient domestic nexus" with respect to conspiracy charge "to avoid the question of extraterritorial application altogether"). The same reasoning applies here. Because there is a more than sufficient domestic nexus with regard to the charges in the Indictment, an extraterritoriality analysis need not be conducted in this case, and Owens' request to dismiss the Indictment should be denied on this basis.

    3. <u>The Counts in the Indictment Either Apply Extraterritorially or Charge Domestic Conduct</u>

Even if the Court deems it necessary to apply an extraterritoriality analysis, each of the counts in the Indictment either charges a violation of a statute that applies extraterritorially or charges domestic conduct.

    a. <u>Conspiracy to Defraud the United States Applies Extraterritorially – Count 1</u>

Title 18, United States Code, Section 371 applies extraterritorially because "[s]tatutes prohibiting crimes against the United States government may be applied extraterritorially even in the absence of 'clear evidence' that Congress so intended." *United States v. Vilar*, 729 F.3d 62, 73 (2d Cir. 2013). Here, the alleged conspiracy is directed at a United States agency, the IRS, and applies extraterritorially. *See United States v. Buck*, 13 Cr. 0282 (VM), 2017 WL 4174931 *7 (S.D.N.Y Aug 28, 2017).

### b. The Wire Fraud Counts – Count 2 and 4 – Charge Domestic Conduct

The wire fraud statute targets domestic wires and does not overcome the presumption against extraterritoriality. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 140-41 (2d Cir. 2014), *rev'd on other grounds, RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016). However, the wire fraud statutes are not being applied extraterritorially here, but are directed against the domestic conduct of Owens and his co-conspirators. By using United States interstate wires, the defendants, including Owens, executed the conspiracy and aided and abetted the wire fraud. (Indictment ¶ 49). When wires travel into or out of the United States, that is sufficient for a domestic application of the wire fraud statutes. *See United States v. Allen*, 160 F.Supp.3d 698, 707 (S.D.N.Y. 2016); *see also United States v. Zarrab*, 2016 WL 6820737 at *3 (finding sufficient domestic connection where a defendant "caused an international wire transfer from the U.A.E. to [a] Canadian company …, which was processed by a United States bank").

### c. Conspiracy to Commit Tax Evasion Applies Extraterritorially – Count 3

"Statutes prohibiting crimes against the United States government may be applied extraterritorially even in the absence of 'clear evidence' that Congress so intended." *Vilar*, 729 F.3d at 73. Section 7201 of Title 26 clearly falls within this rule, as the government has a principal interest in the implementation and enforcement of its tax code. Courts have consistently inferred congressional intent for the extraterritorial application of statutes concerning government assets, property, or personnel. *See, e.g., United States v. Cotten*, 471 F.2d 744, 750 (9th Cir. 1973) (18 U.S.C. § 641, which criminalizes the theft of government property, applies extraterritorially); *United States v. Ayesh*, 762 F. Supp. 2d 832, 839-40 (E.D. Va. 2011) (same for 18 U.S.C. § 641 and § 208(a), which criminalize conversion and theft of federal financial assets and conflicts of

interest in federal financing). Therefore, conspiracy to commit tax evasion should apply extraterritorially.

### d. Money Laundering Conspiracy Applies Extraterritorially – Count 5

The money laundering statute explicitly applies extraterritorially as long as the conduct occurs in part in the United States and the transaction or series of related transactions exceeds $10,000. *See* 18 U.S.C. § 1956(f); *see also United v. Bodmer*, 342 F.Supp.2d 176, 190 (S.D.N.Y. 2015). The government has pleaded sufficient facts to satisfy both of these requirements. (*See, e.g.,* Indictment ¶ 49).

### e. There is a Sufficient Nexus Between Owens and the United States

The Indictment identifies numerous contacts between Owens and the United States, either directly or via his coconspirators. (Indictment ¶¶ 5, 15, 22, 25, 28, 29, 39, 44, 45, 46, 49, 52, 61, 80, 84, 86, 104, 111). Owens had numerous U.S. clients, made trips to the United States to assist U.S. taxpayer clients, communicated with individuals in the United States in furtherance of the conspiracy, and received funds that passed through the United States. These facts demonstrate that a sufficient nexus exists so that application of the statutes extraterritorially against Owens is not arbitrary or fundamentally unfair.

## **CONCLUSION**

The Government's motion for application of the crime-fraud exception and waiver of the attorney-client privilege should be granted. The Court should decline to address Owens's motion to dismiss the Indictment on the ground of the fugitive disentitlement doctrine, or in the alternative should deny the motion.

Dated:    September 10, 2019
            New York, New York

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney
                                        Southern District of New York


                                        DEBORAH CONNOR
                                        Chief, Money Laundering and
                                        Asset Recovery Section
                                        Criminal Division


                            By:    /s Thane Rehn
                                        Eun Young Choi and Thane Rehn
                                        Assistant United States Attorneys
                                        Michael Parker and Parker Tobin
                                        Trial Attorneys, Criminal Division