**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 19, 2020

**BY EMAIL**
William Burck, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
williamburck@quinnemanuel.com

Re: *United States v. Harald Joachim von der Goltz*, S6 18 Cr. 693 (RMB)

Dear Mr. Burck:

On February 18, 2020, Harald Joachim von der Goltz, a/k/a "H.J. von der Goltz," a/k/a "Johan von der Goltz," a/k/a "Jochen von der Goltz," a/k/a "Tica," a/k/a "Tika," (the "defendant") pled guilty, without a plea agreement, to Counts One through Nine of the above-referenced indictment (the "Indictment").

Count One of the Indictment charges the defendant with conspiracy to commit tax evasion, in violation of 18 U.S.C § 371. Count One carries a maximum term of imprisonment of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; a $100 mandatory special assessment; and the costs of prosecution.

Count Two of the Indictment charges the defendant with wire fraud, in violation of 18 U.S.C §§ 1343 and 2. Count Two carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Count Three of the Indictment charges the defendant with money laundering conspiracy, in violation of 18 U.S.C § 1956(h). Count Three carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine of $500,000, or twice the value of the property involved in the transaction, and a $100 mandatory special assessment.

Counts Four through Seven of the Indictment charge the defendant with willful failure to file Reports of Foreign Bank and Financial Accounts, FinCEN Reports 114 ("FBARs"), in violation of 31 U.S.C. §§ 5314 and 5322(a); 31 C.F.R. §§ 1010.350, 1010.306(c, d), and

2019.07.08

1010.840(b); and 18 U.S.C. § 2. Counts Four through Seven each carry a maximum term of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

Counts Eight and Nine of the Indictment charge the defendant with false statements, in violation of 18 U.S.C. §§ 1001(a)(2) and 2. Counts Eight and Nine each carry a maximum term of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

The total statutory maximum term of imprisonment on Counts One through Nine is 75 years.

On the understandings specified below, and in mutual consideration for this agreement, the Office of the United States Attorney for the Southern District of New York ("this Office"), the Money Laundering and Asset Recovery Section of the Department of Justice ("MLARS"), and the defendant hereby enter into this stipulated sentencing agreement (this "Agreement").

The defendant hereby admits the forfeiture allegations with respect to Counts Two and Three of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28 United States Code, Section 2461(c): (i) a sum of money equal to $5,373,609 in United States currency, representing proceeds traceable to the commission of Count Two and the amount of property involved in Count Three (the "Money Judgment"); and (ii) all right, title and interest of the defendant in the following specific property: (1) any and all funds formerly on deposit in First Republic Bank accounts held in the name of EMJO Investments Limited, any and all assets held in investment accounts by Brooke Private Equity Associates, and any funds currently or previously administered by or associated with Brooke Private Equity Associates in the name of EMJO Investments Limited; (2) any and all funds formerly on deposit in Credit Suisse bank accounts in the name of Union Properties, Inc.; (3) any and all interest held by Revack Holdings Foundation and any entity in which Revack Holdings Foundation has an ownership interest, including Erika Investment Management Limited, EMJO Investments Limited, Worldwide Investment Services and Holdings, Union Properties, Inc., Brecknock Inc., and Goldbean Inc., in Boston Capital Ventures III LP, Boston Capital Ventures IV LP, Peninsula Investments Group II LP, BPEA Cayman Fund 2, and CoreCo1 LP, including any claim for future distributions; (4) that residence or apartment, located at Prinzregentenstrasse 153, Wohnung 7. Stock, Nr. 173, 81677, München, Germany (collectively the "Specific Property"). The defendant further agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), the funds currently or previously on deposit in a Degroof Petercam SA bank account in the name of Immobiliera Lux SA, and $440,000 of the value of that lot or parcel of land, together with its building, appurtenances, improvements, fixtures, attachments, and easements, located at 590 Charles River Street, Needham Massachusetts, 02492 (the "Substitute Assets"). In lieu of forfeiting the Substitute Assets, the defendant agrees to make a payment in the amount of $545,893

2019.07.08

in United States currency to the United States on or before the date of sentencing (the "Payment"). The defendant agrees that he will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property, or the Substitute Assets if the Payment is not made on or before the date of sentencing, and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to the Specific Property, and the Substitute Assets if the payment is not made on or before the date of sentencing, to the United States, including, but not limited to, the execution of all necessary documentation and the disclosure and repatriation of all Specific Property and Substitute Assets held overseas. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court. This Office and MLARS agree to accept the Payment as full satisfaction of the Money Judgment upon the entry of a Final Order of Forfeiture as to the full amount of the Specific Properties.

The defendant further agrees to make restitution for the amount of additional tax due and owing as a result of the filing of amended income tax returns, as described in the immediately succeeding paragraph and as determined by the Internal Revenue Service ("IRS"), in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664, including, but not limited to, 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3). The obligation to make restitution shall be made a condition of probation, *see* 18 U.S.C. § 3563(b)(2), or of supervised release, *see* 18 U.S.C. § 3583(d), as the case may be. If the Court orders the defendant to pay restitution to the IRS, either directly as part of the sentence or as a condition of supervised release or probation, the IRS may use the restitution order as a basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

It is understood that at least two weeks prior to the date of sentencing, the defendant shall file with the IRS, and provide copies to the Office, accurate amended individual tax returns for the calendar years 2000 through 2017, or enter into a Form 870 Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment signed by the defendant. Notwithstanding the immediately preceding paragraph, the defendant will pay past taxes due and owing to the IRS for 2000 through 2017, including any applicable penalties, on such terms and conditions as will be agreed upon between the defendant and the IRS. The defendant will not contest the applicability of civil fraud penalties.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

**A.      Offense Level**

1. The applicable Guidelines manual is the manual effective November 1, 2018.

2.   Pursuant to U.S.S.G. § 3D1.2(a)-(c), Counts One through Nine are grouped together in a single group (the "Group").

3.   Pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to the Group is the offense level for the most serious of the counts comprising the Group.

<u>Offense Level Calculation for Count One:  Conspiracy to Evade Taxes – 18 U.S.C. § 371 (U.S.S.G. § 2T1.1)</u>

- The Guideline section applicable to the offense charged in Count One of the Indictment is U.S.S.G. § 2T1.1.

- With respect to the base offense level for the offense charged in Count One of the Indictment, the parties reserve their respective rights to argue to the Court regarding whether or not the defendant's failure to pay expatriation tax in connection with his renunciation of his lawful permanent resident status in October 2017 (the "Expatriation Tax Evasion") constitutes either offense conduct or relevant conduct pursuant to U.S.S.G. § 1B1.3.

    o   If the Expatriation Tax Evasion constitutes either offense conduct or relevant conduct, then the parties agree that the tax loss is more than $1,500,000 but less than $3,500,000, and the base offense level is 22. U.S.S.G. §§ 2T1.1(a)(1), 2T1.1(c)(1), and 2T4.1(I).

    o   If the Expatriation Tax Evasion does not constitute either offense conduct or relevant conduct, then the parties agree that the tax loss is more than $550,000 but less than $1,500,000, and the base offense level is 20. U.S.S.G. §§ 2T1.1(a)(1), 2T1.1(c)(1), and 2T4.1(H).

- Pursuant to U.S.S.G. § 2T1.1(b)(1), because the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity, the offense level is increased by 2 levels.

- Pursuant to U.S.S.G. § 2T1.1(b)(2), because the offense involved sophisticated means, the offense level is increased by 2 levels.

- The base offense level for Count One is therefore 26, if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 24 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

<u>Offense Level Calculation for Count Two: Wire Fraud – 18 U.S.C. § 1343 (U.S.S.G. § 2B1.1)</u>

- The Guideline section applicable to the offense charged in Count Two of the Indictment is U.S.S.G. § 2B1.1.

- Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 7.

- With respect to the base offense level for the offense charged in Count Two of the Indictment, the parties reserve their respective rights to argue to the Court regarding whether or not the Expatriation Tax Evasion constitutes either offense conduct or relevant conduct pursuant to U.S.S.G. § 1B1.3.

    o If the Expatriation Tax Evasion constitutes either offense conduct or relevant conduct, then the parties agree that the loss is more than $1,500,000 but less than $3,500,000, and the base offense level is increased by 16. U.S.S.G. § 2B1.1(I).

    o If the Expatriation Tax Evasion does not constitute either offense conduct or relevant conduct, then the parties agree that the tax loss is more than $550,000 but less than $1,500,000, and the base offense level is increased by 14. U.S.S.G. § 2B1.1(H).

- Pursuant to U.S.S.G. § 2B1.1(b)(10), because a substantial part of the fraudulent scheme was committed from outside the United States, and the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by 2 levels.

- The base offense level for Count Two is therefore 25, if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 23 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

Offense Level Calculation for Count 3 - Money Laundering Conspiracy – 18 USC § 1956 (U.S.S.G. § 2S1.1)

- The Guideline section applicable to the offense charged in Count Three of the Indictment is U.S.S.G. § 2S1.1.

- Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is the offense level for the underlying offense of wire fraud, which is 25, if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 23 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

- Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because the offense is a violation of 18 U.S.C. § 1956, increase by 2.

- The base offense level for Count Three is therefore 27, if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 25 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

Offense Level Calculation for Counts Four through Seven: Willful Failure to File FBAR –
31 U.S.C. §§ 5314, 5322 (U.S.S.G. § 2S1.3)

- The Guideline section applicable to the offense charged in Counts Six through Nine of the Indictment is U.S.S.G. § 2S1.3.

- Pursuant to U.S.S.G. § 2S1.3(a)(2), the base offense level is 6 plus the number of offense levels from the table in § 2B1.1

- Pursuant to § 2B1.1(b)(1)(J), because the amount of funds in the accounts that the defendant failed to report was more than $1,500,000 but less than $3,500,000, the base offense level is increased by 16 levels.

- Pursuant to U.S.S.G. § 2S1.3(b)(1), because the defendant knew that the funds were proceeds of unlawful activity or were intended to promote unlawful activity, the offense level is increased by 2.

- Pursuant to U.S.S.G. § 2S1.3(b)(2), because the defendant was convicted of an offense under subchapter II of chapter 53 of Title 31, United States Code, and committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12 month period, the level is increased by 2.

- The base offense level for each of Counts Four through Seven is therefore 26.

Offense Level Calculation for Counts Eight and Nine:  False Statements – 18 U.S.C. §
1001 (U.S.S.G. § 2B1.1)

- The Guideline section applicable to the offense charged in Counts Eight and Nine of the Indictment is U.S.S.G. § 2B1.1.

- Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 6.

- With respect to the base offense level for the offense charged in Counts Eight and Nine of the Indictment, the parties reserve their respective rights to argue to the Court regarding whether or not the Expatriation Tax Evasion constitutes either offense conduct or relevant conduct pursuant to U.S.S.G. § 1B1.3.

  o If the Expatriation Tax Evasion constitutes either offense conduct or relevant conduct, then the parties agree that the loss is more than $1,500,000 but less than $3,500,000, and the base offense level is increased by 16. U.S.S.G. § 2B1.1(I).

  o If the Expatriation Tax Evasion does not constitute either offense conduct or relevant conduct, then the parties agree that the tax loss is more than $550,000 but less than $1,500,000, and the base offense level is increased by 14. U.S.S.G. § 2B1.1(H).

- Pursuant to U.S.S.G. § 2B1.1(b)(10), because a substantial part of the fraudulent scheme was committed from outside the United States, and the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by 2 levels.

- The base offense level for Counts Eight and Nine is therefore 24, if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 22 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

4.  Pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to the Group is the offense level for the most serious of the counts comprising the Group. Accordingly, the base offense level is 27, which is the offense level of Count Three if the Expatriation Tax Evasion is offense conduct or relevant conduct, or 26, which is the offense level of Counts Four through Seven, the highest offense level if the Expatriation Tax Evasion is not offense conduct.

5.  Pursuant to U.S.S.G. § 3B1.1(b), because the defendant was a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive, the offense level is increased by 3.

6.  Pursuant to U.S.S.G. § 3C1.1, because the defendant willfully obstructed and impeded, and attempted to obstruct and impede, the administration of justice with respect to the investigation and prosecution of the instant conviction, and the obstructive conduct related to the defendant's offense of conviction and relevant conduct, the offense level is increased by 2.

7.  Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the above, the applicable Guidelines offense level is 30 if the Expatriation Tax Evasion is offense conduct or relevant conduct, and 29 if the Expatriation Tax Evasion is not offense conduct or relevant conduct.

**B.     Criminal History Category**

Based upon the information now available to this Office and MLARS (including representations by the defense), the defendant has no applicable criminal history.

In accordance with the above, the defendant's Criminal History Category is I.

**C.     Sentencing Range**

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 97 to 121 months' imprisonment if the Expatriation Tax Evasion is offense conduct or relevant conduct, or 87 to 108 months' imprisonment if the Expatriation Tax Evasion is not offense conduct

or relevant conduct (following the Court's ruling, the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At both Guidelines level 30 and Guidelines level 29, the applicable fine range is $30,000 to $300,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreements that may have been entered into between this Office and MLARS and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, see U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the

sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office and MLARS cannot, and do not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range, as determined by the Court's ruling regarding the Expatriation Tax Evasion, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range, as determined by the Court's ruling. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $30,000, and the Government agrees not to appeal any fine that is greater than or equal to $300,000. The defendant also agrees not to appeal any forfeiture order that is less than or equal to the amount of the Money Judgment, the Specific Property, and the Substitute Assets, and the Government agrees not to appeal any forfeiture order that is greater than or equal to the Money Judgment, the Specific Property, and the Substitute Assets. The defendant also agrees not to appeal any special assessment that is less than or equal to $900. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he pled guilty because he is in fact guilty. By entering into this Agreement, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognized at the time of his guilty plea that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognized that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact

or by willful misrepresentation, or otherwise illegally procured.  The defendant acknowledges that he discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel prior to entering his guilty plea.  The defendant affirms that he pled guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States.  The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction.  It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the defendant's convictions be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office and MLARS.

2019.07.08

Apart from any written Proffer Agreements that may have been entered into between this Office, MLARS, and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office, MLARS, and the defendant.  No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Eun Young Choi / Thane Rehn
Assistant United States Attorneys
(212) 636-2187 / 2354

APPROVED:

_____
Ian McGinley/Timothy T. Howard
Alexander Wilson/Andrew C. Adams
Chiefs, Complex Frauds & Cybercrime and
Money Laundering and Transnational Criminal
Enterprises Units

By: _____
Michael Parker
Trial Attorney
(202) 514-0421

APPROVED:

_____
Deborah Connor
Chief, MLARS, Criminal Division

AGREED AND CONSENTED TO:

_____
Harald Joachim von der Goltz

_____May 27, 2020_____
DATE

APPROVED:

_____
William Burck, Esq./Daniel Koffmann
Attorney for Harald Joachim von der Goltz

_____5/27/20_____
DATE

2019.07.08