

ZUCKERMAN
SPAEDER

Aitan D. Goelman
PARTNER
Zuckerman Spaeder LLP
agoelman@zuckerman.com
202.778.1999

November 18, 2020

<u>**VIA ECF**</u>

Hon. Richard M. Berman
U.S. District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: United States v. Owens, et al., 18 Cr. 693 (RMB)

Dear Judge Berman:

I write in reply to the government's opposition to Defendant Harald Joachim von der Goltz's request to postpone his surrender date. The government's position is misguided for four reasons.

### A. Assignment to a federal medical center may *increase* Mr. von der Goltz's risk of contracting COVID-19.

The fact that FMC Devens is reporting no "active cases among inmates … at this time," ECF #264 at 2, is not persuasive. The facility is reporting 5 cases among *staff*, and it certainly has had active cases among inmates in the past (including two deaths). The BOP protective measures that the government cites are the same at all institutions, and they are not preventing outbreaks. The problem is that outbreaks at prison facilities occur silently and spread rapidly, and federal medical centers are prime examples of that danger.

The assignment to a federal medical center as opposed to an ordinary federal correctional institution does not eliminate Mr. von der Goltz's risk of contracting COVID-19 and it likely makes it worse. Inmates at federal medical centers tend to be older and sicker, both physically and mentally. They are more likely to be shuttled in and out of other viral hotspots, like full-service hospitals in the community. They are less likely to take precautions such as mask-wearing, hand-washing, and social distancing. And as far as we know, social distancing is no easier in a medical center compared to a correctional institution.

The data certainly bear out these propositions. Federal medical centers, or institutions with federal medical centers on grounds, have been among the hardest hit facilities operated by the Bureau of Prisons. Indeed, more people have died at Butner (all facilities) than any other federal

correctional institution.[1] On October 26, 2020, a group of Butner inmates filed a class action complaint against BOP officials detailing innumerable deficiencies in protecting inmates from COVID-19.[2] According to BOP's website, Butner has four facilities (two medium security, one low security, and a hospital). Across Butner's campuses, 985 inmates have been infected and 26 have died. Staff at Butner have also been infected and one staff member died.

At FMC Carswell, 539 inmates have tested positive and 6 have died. In July 2020, FMC Carswell suffered a "500-case outbreak of COVID-19," which was "one of the largest confirmed outbreaks at any federal prison in the country."[3] On July 19, 2020, FMC Carswell reported 200 cases. *Id.* Only two days later, that number soared to 510. *Id.* Two days ago a Ft. Worth newspaper reported that two attorneys representing the only woman with a federal death sentence likely caught COVID-19 during a client visit at FMC Carswell.[4]

At FMC Fort Worth, 618 inmates have tested positive and 12 have died. And at FMC Lexington, 219 inmates have tested positive and 9 have died. Adding the two deaths at FMC Devens, 55 inmates have died from COVID-19 at federal medical centers or institutions with federal medical centers on grounds. Of the 141 total COVID-19 inmate deaths at BOP facilities, 39 percent have occurred at these five locations. And the total number of COVID-19 cases at medical centers (as at other BOP facilities) is almost certainly undercounted because of limited testing.

Perhaps federal medical centers are better able to *treat* COVID-19 patients after an inmate becomes infected. But treatment methodologies remain uncertain, and the data show that federal medical centers are not better able to *prevent* COVID-19 infections. For Mr. von der Goltz, prevention is the whole game. At his age and with his medical history, his prognosis for recovery is poor no matter where he is.

### B.    Mr. von der Goltz's condition has worsened.

The government doubts Mr. von der Goltz's condition has worsened, ECF #264 at 2, but provides no medical evidence to support that claim. The records submitted with the November 9 request were generated because von der Goltz's was experiencing worsening symptoms; i.e., he had "dyspnea on exertion," meaning shortness of breath during physical movement. *See* ECF

---

[1] Hannah Critchfield, *He tried to sue over COVID-19 conditions at his prison. He died before it was filed.*, North Carolina Health News (Nov. 9, 2020).

[2] *See Hallinan* v. *Scarantino*, ECF No. 1, Case No. 20-cv-00563 (E.D.N.C. Oct. 26, 2020).

[3] *More than 500 Women Contract COVID-19 at TX Federal Prison*, J. Emer. Med. Servs. (July 22, 2020).

[4] Kaley Johnson, *Lawyers for only woman on federal death row catch COVID after visit to Fort Worth prison*, Ft. Worth Star-Telegram (Nov. 16, 2020).

#262-1, at PDF 6-7 ("The patient … has been doing well until several months ago when he developed progressive dyspnea on exertion.") That is a concerning symptom in a patient with Mr. von der Goltz's history. The test results showed what was likely causing those symptoms. The immediate cause of his recent progressive dyspnea was not his prior heart attacks; it was most likely caused by a worsening of mitral regurgitation, complicated by a severely dilated left atrium and a new case of paroxysmal atrial fibrillation, as reported in our November 9 submission.

The government argues that Mr. von der Goltz's letter constitutes an attempt to "relitigate medical issues" that, according to the government, the Court was "well aware of" at sentencing. ECF # 264 at 2. This is inaccurate. The Court was apprised of Mr. von der Goltz's existing medical issues at the time of sentencing, but the sentencing record is devoid of mention of these new medical issues because they did not exist at the time (to Mr. von der Goltz's knowledge).

### C. An efficacious vaccine is now even more likely to be available within a short period.

Notably, in an opposition devoted to persuading the Court that there have been no material changes since sentencing that justify an adjournment of the reporting date, the government fails to respond to the news within the last two weeks about the dramatic progress toward a vaccine. It was the *government* who pointed to potential progress on a vaccine at sentencing to argue that the Court could set a reporting date and then monitor changing conditions, and it was the *government* that concluded, correctly, that availability of a vaccine "would, obviously, further reduce the risk to the defendant." Tr. 47. Now that we are actually on the cusp of such availability it makes no sense to deny this risk reduction to a member of the most at-risk segment of the population, for the sole purpose of starting a prison term a couple months earlier.

Moreover, the vaccine news has become significantly more optimistic. On November 9, 2020, the day of our initial submission, Pfizer announced its vaccine candidate had proved 90 percent effective. That news itself was stunning, yet nine days later the vaccine prospects have improved markedly. On November 16, Moderna announced that its vaccine candidate is 94.5 percent effective.[5] And on November 17, Pfizer announced that final data put its vaccine at 95 percent effective and that Pfizer would be seeking an emergency use authorization from the Food and Drug Administration "within days."[6] Moreover, the Pfizer candidate (at minimum) appears to work in older individuals. *Id.* The likelihood of two efficacious vaccines, and possibly more to follow, substantially advances the timeline for distribution. Dr. Anthony Fauci has estimated that

---

[5] Joe Palca, *Moderna's COVID-19 Vaccine Shines in Clinical Trial*, NPR (Nov. 16, 2020).
[6] Maggie Fox and Amanda Sealy, *Pfizer and BioNTech say final analysis shows coronavirus vaccine is 95% effective with no safety concerns*, CNN (Nov. 18, 2020).

"as many as 20 million people could get coronavirus vaccinations around the end of the year."[7]
In light of these facts, we respectfully suggest that a stay of the reporting deadline is reasonable
and proportionate in light of the severe risk that Mr. von der Goltz could contract the virus in
prison before a vaccine is available.

### D.    As the COVID-19 wave gets worse, deferred reporting becomes more prudent.

While the vaccine news has gotten better in the past nine days, the transmission news has gotten
worse. Our November 9 submission indicated 132,797 new cases across the U.S. on November
6. On November 17, the number was 159,508 and rising.[8] The seven-day daily average of new
cases in Massachusetts is now up to 2,583; the Commonwealth's 14-day change rate is up 112
percent.[9] States around the country have implemented new restrictions in light of the surging
numbers.[10] New York City schools announced they were closing as this letter was being
prepared. No one can confidently predict how bad the landscape will be next month. As the surge
of cases grows worse, other federal courts have delayed reporting dates. *See United States* v.
*Evans*, ECF No. 255, Case No. 17cr053-2 (S.D. Ohio Sep. 23, 2020).

According to the Washington Post, between March 1 and August 1, 2020, 18 inmates died in
BOP custody while their requests for sentence reductions were pending.[11] Mr. von der Goltz's
convictions were serious, but they do not warrant a sentence that imposes a severe risk of death.
We respectfully suggest that a brief delay in his reporting date is consistent with all reasonable
sentencing objectives, and may well save Mr. von der Goltz's life.

### E.    Request for stay.

Should the Court decline this request, we respectfully request that the Court stay its decision for
a reasonable period to allow Mr. von der Goltz to take an immediate appeal to the Second
Circuit.

---

[7] Martin Finucane and Jonathan Saltzman, *Fauci says 20 million Americans could get COVID vaccinations around the end of the year*, Boston Globe (Nov. 17, 2020).
[8] *Covid in the U.S.: Latest Map and Case Count*, The New York Times (visited Nov. 18, 2020).
[9] New York Times, *Massachusetts Covid Map and Case Count* (visited Nov. 18, 2020).
[10] Tyler Olson, *Governors bring back sever coronavirus lockdowns, tighten restrictions as cases hit record highs*, Fox News (Nov. 16, 2020).
[11] Justin Wm. Moyer and Neena Satija, *Frail inmates could be sent home to prevent the spread of covid-19. Insead, some are dying in federal prisons.*, Wash. Post (Aug. 3, 2020).

Respectfully submitted,

/s/ *Aitan D. Goelman*

Aitan D. Goelman

cc: all counsel of record (by ECF)

> Surrender date is extended to January 4, 2021 before 2:00 pm at BOP institution.
>
> SO ORDERED:
> Date: 11/19/2020
> Richard M. Berman, U.S.D.J.